sum of $1,527.75 and interest, less the $70 received from the estate of said Parker in Connecticut, and that the defendants, as executors of the surety, be decreed to pay to the plaintiff that sum.

In Otto v. Van Riper, 31 App. Div. 278, 52 N. Y. Supp. 773, affirmed in 164 N. Y. 536, 58 N. E. 643, 79 Am. St. Rep. 673, we held (following Bischoff v. Engel, 10 App. Div. 242, 41 N. Y. Supp. 815) that where an administrator died in a foreign state, wholly insolvent, without having accounted, and where no representative of the deceased trustee had been appointed in this state, equity would intervene and furnish a remedy; that no accounting was necessary; and that an action in equity to recover of the surety without such an accounting could be maintained. We there said:

"We think a court of equity had power to determine the liability of the guardian, and in the same action enforce. the obligation of the sureties upon the bond; and upon the facts as found by the learned trial judge, sustained by the evidence, we think the defendants [the sureties] were liable."

At law the surety was not responsible until after a settlement of the guardian's accounts, and a refusal to comply with a decree requiring the guardian to pay the balance found due to his ward; but where such an accounting before the surrogate who appointed the guardian is impossible because of the insolvency and death of the guardian, and where, in consequence of there being no assets, no letters testamentary or of administration could be obtained in this state, a court of equity will take jurisdiction, ascertain the amount due from the guardian, and compel the sureties to pay. Such an action being solely cognizable in a court of equity, the action was triable at Special Term.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the action restored to the Special Term calendar for trial. All concur.

---

(105 App. Div. 373.)

### WEST v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   June 16, 1905.)

1. STREET RAILROAD—KILLING OF PERSON ON TRACK—NEGLIGENCE.

A street railroad was not negligent in causing the death of a person killed while attempting to run across a street a few feet in front of an approaching cable car at a point where there was no cross-walk, in the absence of evidence justifying a conclusion that, at the time deceased ran in front of the car, anything that the gripman could do would have avoided the accident.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 195.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

The mere fact that a child 10 years of age is non sui juris does not absolve him from all care in crossing street railway tracks, but he is bound to exercise the care that can reasonably be expected of a child of his age and intelligence.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 217.]

Appeal from Trial Term, New York County.

Action by Jessie West, as administratrix of the estate of Raphael West, otherwise known as Raphael Moss, deceased, against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Bayard H. Ames, for appellant.
David May, for respondent.

INGRAHAM, J. The action is brought to recover the damages sustained by the next of kin of the plaintiff's intestate, caused by his death. It appears that on the 2d of September, 1899, the defendant was operating a cable railway on Lexington avenue; that on Lexington avenue, from Ninety-Sixth to Ninety-Seventh streets, there is a gradual down grade; that on the evening of September 2, 1899, between 8 and 9 o'clock, the deceased started to cross Lexington avenue at Ninety-Seventh street from east to west; that when he was on the sidewalk the car was south of Ninety-Seventh street, and the deceased started from the sidewalk as the car was coming from Ninety-Seventh street; and that the car was going about six miles an hour when it struck the deceased. A witness called for the plaintiff testified that the deceased, when he was struck, was not at the cross-walk, but about the middle of the roadway of Ninety-Seventh street as it crossed Lexington avenue; that when the deceased stepped upon the easterly rail the car was about 20 or 25 feet away from him, but that "he just made a step from this easternmost or farthest rail, and was immediately struck by the car. He was hit at the slot, right in the center. And he made just one step from the east rail to the point where he was hit and struck." Another witness called for the plaintiff testified that the deceased was going across the street pretty fast—"on a sort of a run"—and that the car was about 30 feet from him when he attempted to cross Lexington avenue. The gripman, called for the defendant, testified that his car was over the north crossing of Ninety-Seventh street when he saw the boy running about six feet from the rail, and about 10 feet in front of the car; that he rang the bell and hollered, but the boy kept on running until he got to the west side of the track, and he stopped; that, if he had kept on going, he would have cleared the car, but he stopped there, and the car hit him, and the car ran about 6 feet after it struck the boy. Another witness called for the defendant testified that he saw the boy running towards the car, and that, "instead of going the way he started, he cut cater-corner, and ran in front, and stopped right in the middle of the track, and wheels right around. With that the car hit him, and he went under the fender. * * * When he started on the track, crossing over in this diagonal direction at that time I should think the car was about five feet from him. Could not be

more than that." This testimony was corroborated by three other witnesses, who were apparently entirely disinterested.

At the end of the whole case, counsel for the defendant moved for the direction of a verdict, which motion was denied, and the defendant excepted. I think this evidence is insufficient to sustain a finding that this accident was caused by the defendant's negligence. The evidence is undisputed that the deceased ran across the street,. not upon the cross-walk, right in front of an approaching car. There is no evidence to show that the gripman had not control of the car; that he did not do everything that could be done to stop· the car after the boy ran upon the track. One witness testifies that the car was 20 feet away when the boy stepped upon the track, but he also testifies that as the boy took one step on the track he· was struck by the car, so that his going upon the track and being· struck by the car were almost simultaneous. It is quite apparent that, if this happened, no act of the gripman could have prevented the accident. The only effect of the evidence is that the boy was run over by the car, and that is not sufficient to sustain a finding of negligence, in the absence of proof that the gripman could have· stopped the car or could have avoided running over the boy. There is the absence of evidence to justify a conclusion that, when· the boy ran in front of the car, anything that the gripman could' do would have avoided the accident. I think, therefore, that the· denial of the defendant's motion for the direction of a verdict was. error.

I also think that the instruction to the jury in relation to the· contributory negligence of the deceased, and whether or not he was sui juris, was error. In his charge to the jury, the learned trial' judge said:

"With respect to the question of contributory negligence, you must determine whether this boy was sui juris; in other words, you are to determine· whether he had sufficient intelligence and capacity to care for himself. * * * If you conclude from the evidence that the boy was non sui juris (that is, by reason of his age, he did not possess sufficient intelligence and' capacity to take care of himself), then whether he was careless, reckless, or not, does not enter into the case. Your attention must be directed to the question of whether his custodians were guilty of contributory negligence in permitting him to go upon the streets unattended."

To this instruction the defendant excepted. The only evidence· as to the deceased was that he was a bright and intelligent boy; that at the time of his death he was in good health, and never had a doctor. While it may be that, in the case of a child 10 years of age, the question as to whether or not he is sui juris, and thus required' to exercise the care of an adult, is a question of fact for the· jury (Zwack v. N. Y., L. E. & W. R. Co., 160 N. Y. 362, 54 N. E. 785), still the mere fact that a bright, intelligent boy, 10 years of age, is non sui juris, does not absolve him from all care in crossing railway tracks. He is still bound to exercise the care that can be reasonably expected of a child of his age and intelligence. As was· said by the Court of Appeals in Byrne v. N. Y. C. & H. R. R. Co.,. 83 N. Y. 620:

"The law is not so unreasonable as to exact from an infant the same de-gree of care and prudence in the presence of danger as it exacts from adults. An infant, to avoid the imputation of negligence, is bound only to exercise that degree of care which can reasonably be expected of one of its age."

Here was a bright, intelligent boy, 10 years of age, running about in the street between 8 and 9 o'clock at night. He was certainly chargeable with the exercise of some care to avoid approaching cars, and, while it was for the jury to say whether or not, consider-ing his age and intelligence, he was chargeable with the degree of care of an adult, it was error to tell the jury that if they found that he was non sui juris "(that is, by reason of his age, he did not possess sufficient intelligence and capacity to take care of himself), then whether he was careless, reckless, or not, does not enter into the case."

I think that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and McLAUGHLIN, J., concur. HATCH, J., concurs on last ground.